### In re UNITED STATES BRASS CORPORATION, Debtor.

**Bankruptcy No. 94–40823–S.**

United States Bankruptcy Court,
E.D. Texas,
Sherman Division.

Aug. 11, 2000.

Michael R. Rochelle, Rochelle & Hutcheson, Stephen T. Hutcheson, Dallas, TX, for Debtor.

Jarrel D. McDaniel, Sheinfeld Maley & Kaye, P.C., Houston, TX, for Movant, Shell Oil Co.

Robert C. Johnson, Robert B. Milner, Sonnenschein, Nath & Rosenthal, Chicago, IL, David W. Parham, Strasburger & Price, L.L.P., Judith Elkin, Haynes & Boone, Dallas, TX, for Objecting Parties.

## MEMORANDUM OPINION

DONALD R. SHARP, Chief Judge.

Now before the Court is the Plan Proponents' Motion for Order in Aid of Consummation of Plan and for Approval of Settlement of Plumbing Claims of Shell Oil Company and Hoechst Celanese Corporation filed by United States Brass Corporation (the "Debtor"), Eljer Plumbingware, Inc., formerly Eljer Manufacturing, Inc. ("EMI") and Eljer Industries, Inc. ("EII")("EMI" and "EII" referred to herein collectively as "Eljer"), Shell Oil Company ("Shell") and HNA Holdings, Inc. formerly Hoechst Celanese Corporation ("Celanese"). Debtor and Eljer, the Plan Proponents of the Reorganized Debtor's confirmed Plan of Reorganization, together with Shell and Celanese (hereinafter "Movants") seek this Court's approval of their proposed settlement agreement. This opinion constitutes the Court's findings of fact and conclusions of law required by Fed.R.Bankr.Proc. 7052 and disposes of all issues before the Court.

### FACTUAL AND PROCEDURAL BACKGROUND

The Court confirmed the Plan Proponents' Fourth Amended Plan Of Reorgani-

zation Proposed By The Debtor, Eljer Industries, Inc. And Eljer Manufacturing As Modified (the "Plan") in this case by an order entered on February 24, 1998. On March 19, 1998,the Plan became effective. Accordingly, the documents authorized and approved under the Plan were executed and delivered (the "Plan Documents") including the Brass Trust Agreement and the Shell/Celanese Settlement Agreement and the initial plan funding occurred. Pursuant to the confirmed plan, the Brass Trust was set up and funded to receive and distribute funds to be provided to the creditors of the estate (the "Brass Trust"). The Court has been advised that priority claims against the estate were paid or satisfied in accordance with the terms of the Plan, the secured claims were paid, the holders of general unsecured claims who have elected to be "cashed out" have received their full cash payment and the holders of general unsecured claims who have chosen to be paid in full in three equal annual installments have received the first installment payment. *See Motion at P.2, ¶ 1.* The Debtor further advises the Court that the Brass Trust has instituted claims resolution procedures to commence resolution of claims and that the holders of Plumbing Claims (as defined in the Plan); Brass Trust has settled and paid a substantial percentage of those claims and is continuing the resolution procedures as to other holders. In addition, the Court has been advised that the Brass Trust has distributed to the members of the Cox Class (as defined under the Plan) their pro rata share of Plan proceeds which have been received by the Brass Trust. *See Motion, Ibid.*

Celanese and Shell are the holders of plumbing claims (the "Shell/Celanese Claims"). The Plan, as modified, provides at 8.20(b) and 8.21:

8.20 Litigation Obligations.

Conditioned upon EMI, EII, the Cox Plaintiffs, Shell and Celanese all becoming Settling Parties: [ (a) . . .]

(b) The Cox Plaintiffs, Shell and/or Celanese (or the Liquidated Trust if it is selected as an option) shall be entitled to assert the Shell/Celanese Claims by institution of a suit in a court of competent jurisdiction against Debtor, EMI and EII, subject to the limitation that the Cox Plaintiffs, Shell, and/or Celanese (or the Liquidated Trust if applicable) may only recover any amount owing, determined by settlement or final judgment, solely from the proceeds of Insurance Coverage and shall pay over the proceeds of such recoveries, less all costs incurred in pursuing the Cox Plaintiffs Claims and/or the Shell/Celanese Claims, to the Brass Trust in accordance with the Plan.

8.21. Limitation Periods.

Any period fixed under applicable law for commencing or continuing a civil action in a court on the Cox Plaintiffs Claims and Shell/Celanese Claims against the Debtor, by virtue of Confirmation of the Plan shall not expire until the later of (x) the end of such period, including any suspension of such period, occurring on or after the commencement of the Chapter 11 Case, or (y) one hundred eighty days after the Effective Date.

To wit: the Plan imposes upon Movants specific obligations to litigate and to defend against litigation. In the event Celanese and Shell are determined to be entitled to a recovery against the Debtor and Eljer on the Shell/Celanese Claims, the Debtor and Eljer are required to seek recovery from the insurers ("Insurers") who issued insurance policies covering the Debtor and Eljer and any predecessor or successor of the Debtor and Eljer under which any claim may be made with respect to any plumbing claim ("Insurance Recoveries"). In the event the Insurers refuse to honor the request for payment of Insurance Recoveries or engage in other bad faith conduct, the Debtor and Eljer are required to assert claims or causes of action against the Insurers to recover such

Insurance Recoveries and damages for other bad faith conduct ("Insurance Litigation"). *Plan, section 8.20(iii).*

In addition to the pending litigation among Movants, the Insurers, the Debtor and Eljer currently are in litigation seeking, *inter alia,* to resolve coverage issues for plumbing claims under the Policies (the "Coverage Determination") which was pending prior to the institution of the Bankruptcy Case (the "Pending Insurance Coverage Litigation").[1] *See Motion pp. 3–4.*

On October 18, 1999, Movants filed their Motion for approval of a settlement agreement ostensibly "in aid of and implementation of the Plan". *See Motion at p. 6.* Under the proposed settlement agreement among Celanese, Shell, the Debtor and Eljer, the Shell/Celanese Claims will be liquidated by submission to final and binding arbitration commencing not less than six months in the future[2]. *See Motion, p. 7, ¶ 9(a).* Movants also seek to extend through tolling the statute of limitations for filing suit on the Shell/Celanese claims pending the outcome of the arbitration. The Insurers under the Plan filed a joint objection and the matter came on pursuant to regular setting before this Court. Following trial, the matter was taken under advisement.

### JURISDICTION

■ This Court expressly retained jurisdiction over the subject matter of the

1. The Pending Insurance Litigation is captioned (i) *In re Eljer–Brass Insurance Coverage Litigation,* Nos. 91CH08364, 92CH02701, 93CH10231 and 94CH031 18, Circuit Court, Cook County, Illinois, (ii) *California Union Ins. Co. v. Eljer Industries, Inc., et al.,* Civ. A. No. 94–C–1540, Adversary Proceeding No. 94–A–1328, Civ. A. No. 95–C–0484, United States Bankruptcy Court for the Northern District of Illinois and (iii) *Eljer Industries, Inc., et al. v. Aetna Casually & Surely Co.,* Civ. A. No. 93–C–4320, Adversary Proceeding No. 94–A–1289, Civ.A. No. 95–C–0483, United States Court for the Northern District of Illinois.

2. The commencement date is dependant upon alternative "triggers". Under subsection 9(d)

Motion pursuant to Article XV of the confirmed Plan and the order confirming the Plan. The Bankruptcy Court has jurisdiction to clarify and enforce its own orders under 11 U.S.C. § 105(a) and is the best court to do so. *Cites omitted.*

### DISCUSSION

■ The Court has considered the pleadings, the evidence, the argument of counsel and the record in this case. This Court derives its authority to approve settlements from Rule 9019(a) of the Federal Rules of Bankruptcy Procedure. The Rule provides that, "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr.P. 9019(a) [formerly 11 U.S.C. Rule 919(a) ]. The decision of whether to approve a particular compromise lies within the discretion of the trial judge[ ... ]. *Matter of Jackson Brewing Co.,* 624 F.2d 599, 602–03 (5th Cir.1980); *see also Matter of Walsh Const.,* 669 F.2d 1325, 1328 (9th Cir.1982). The settlement should be "fair and equitable", as those terms are defined by jurisprudence, and in the best interests of the estate. *E.G. See SEC v. American Trailer Rentals Co.,* 379 U.S. 594, 85 S.Ct. 513, 13 L.Ed.2d 510 (1965); *Protective Committee v. Anderson,* 390 U.S. at 441, 88 S.Ct. at 1171. *Also, Matter of Jackson Brewing Co., Supra.*

■ The Court must deny the relief requested by Movants on two bases. First,

of the proposed agreement "The Arbitration to the extent applicable, shall commence the earlier of (i)six months after the date the pending Insurance Coverage Litigation is concluded by a final judgment, (ii) a date set by mutual agreement of all the Parties, (iii) a date selected after six months after the date of the entry an order of approving this Agreement ('Approval Order' ) by the unilateral decision of any of the Parties (the 'Unilateral Party') upon the Unilateral Party giving six months written notice of the date set for the commencement of the Arbitration to the other Parties; or (iv) eighteen months after the date of the entry of the Approval Order."

the compromise and settlement proposed by the Movants fails to settle any matter before the courts; second, the Settlement Agreement contemplated by the parties is a sub-rosa modification of the confirmed Plan.

As to the former, the testimony offered at the hearing on the Motion made it abundantly clear to this Court that the proposed agreement will not end, expedite or curtail litigation of the Shell/Celanese claims. It is no settlement at all. No arms length bargaining has occurred. No value has changed hands. No claims have been released or reduced. The Motion simply seeks to substitute an arbitration process for the resolution of those claims which the confirmed Plan required to be litigated in a court of competent jurisdiction and determined by settlement or final judgment. See *Plan at* 8.20(b). Additionally, Movants anticipate litigation to recover a final award in the event of bad faith conduct by the Insurers. *Motion, p. 8,* ¶ *f.* Based upon the testimony presented at the trial and the relationships among the parties heretofore, it is imminently clear to the Court that the resolution of the claims will ultimately take place in court: arbitration will merely postpone the inevitable outcome. Therefore, the proposed "settlement" is not in the best interests of the estate. *Matter of Jackson Brewing Co.,* 624 F.2d 605, 607 (5th Cir. 1980); *Matter of AWECO, Inc.,* 725 F.2d 293, 298 (5th Cir.) *cert. denied,* 469 U.S. 880, 105 S.Ct. 244, 83 L.Ed.2d 182 (1984).

The Court has considered the Movants' arguments with respect to whether arbitration may be subsumed under the rubric of "litigation in a court of competent jurisdiction" and "settlement" contemplated in Art. 8.20 of the confirmed Plan. *Proponants' Reply To The Insurers' Objection To Motion For Order In aid of Consummation of Plan.* The Court has also considered the Movants' assertion that arbitration is more economical than litigation. The Court concludes that the evidence contradicts the latter assertion. The Court has also considered Movants' argument that the Insurers have no standing to object. The Court finds it unnecessary to address any of the aforementioned arguments, because the Motion must be decided on another, more compelling ground. This Court may not and will not approve an agreement that effectuates a modification to a confirmed plan of reorganization *after* substantial consummation in contravention of 11 U.S.C. § 1127(b).[3]

■■■ 11 U.S.C. § 1127(b), as supported by jurisprudence, expressly prohibits modification of a substantially consummated plan of reorganization. Whether a chapter 11 plan has been substantially consummated is a fact to be determined by the bankruptcy court on a case by case basis. *In re Stevenson,* 148 B.R. 592, 596 (D.Idaho 1992). Based upon the admissions of the pleadings regarding distributions, this Court must conclude that the Debtor's Fourth Amended Plan, as Modified which was confirmed by order of this Court, has been substantially consummated. See *11 U.S.C. § 1101(2)*[4] and *Matter of Potts,* 188 B.R. 575 (Bkrtcy.N.D.Ind.

---

3. 11 U.S.C.A. § 1127(b): "The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. Such plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title."

4. 11 U.S.C. § 1101(b) provides:

"substantial consummation" means—
(A) transfer of all or substantially all of the property proposed by the plan to be transferred;
(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
(C) commencement of distribution under the plan.

1995). In *Matter of Potts*, the Court found that distribution under the confirmed plan in that case had been commenced, as required for a finding of substantial consummation precluding modification of the confirmed reorganization plan, where debtors asserted in their motion to modify confirmed plan that they had made substantial ongoing payments on more than ten secured and priority claims pursuant to plan, which payments had amounted to more than $8,000 per month since confirmation. *Matter of Potts, Ibid* at 581. The facts in the case at bar are comparable. Priority claims have been paid. Secured claims have been paid. General unsecured claimants electing to be "cashed out" have been paid. Installment payments to general unsecured creditors have commenced. Members of the Cox Class have received their pro rata share of Plan proceeds which have been received by the Brass Trust. *See Motion, page 2, para. 1.* Accordingly, this Court must find that the Plan has been substantially consummated.

"Permitting appellees, to modify a provision that explicitly was incorporated into a reorganization plan [ ... ] would permit circumvention of the bankruptcy process. When a plan is proposed, a disclosure statement must be prepared and disseminated so that all relevant constituencies are apprised of its provisions. Parties in interest register their approval or disapproval. Their positions then are considered by the Bankruptcy Court in determining whether to confirm the plan. *See In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 758–59 (Bankr.S.D.N.Y. 1992). Only after notice and an opportunity to be heard may the Bankruptcy Court alter the legal relationships among the debtor and its creditors and other parties in interest." *In re Ionosphere Clubs, Inc.*, 208 B.R. 812, 816 (S.D.N.Y.1997). The proposed "settlement" agreement alters by extension the provisions of the Plan respecting time limitations with respect to bringing actions if the arbitration results in giving the carriers a defense to coverage. *Plan* at 8.21. Moreover, arbitration

(as to the claims which are the subject matter of the proposed "settlement") was not an option specifically contemplated and negotiated by the parties at confirmation. The Court will not and may not allow such a modification of a confirmed and substantially consummated plan of reorganization in contravention of 11 U.S.C. § 1127(b) regardless of Movants' attempts to clothe it as a settlement or clarification of an order.

Accordingly, the Movants' Motion for Order in Aid of Consummation of Plan and for Approval of Settlement of Plumbing Claims of Shell Oil Company and Hoechst Celanese Corporation filed by the Debtor, Eljer, Shell and HNA Holdings, Inc. formerly Hoechst Celanese Corporation must be denied. An order will be entered accordingly.